# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| MACIO P. TOOLEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WASHINGTON GROUP )<br>INTERNATIONAL, INC., *and its* )<br>*successor in interest* URS Corporation, )<br>CLEVELAND TRAMRAIL, *and its* )<br>*successor in interest* GORBEL INC. *also* )<br>*known as Gorbel International LLC,* )<br>SHEPARD NILES INC., *and its successor* )<br>*in interest* KONECRANES INC. *a/k/a* )<br>*Koneamerica Inc f/k/a Konecranes* )<br>*Landel Inc., f/k/a Kranco Crane Services* )<br>*Inc.* )<br>)<br>Defendants, )<br>)<br>and )<br>)<br>WASHINGTON GROUP )<br>INTERNATIONAL, INC., *and its* )<br>*successor in interest* URS Corporation, )<br>)<br>Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>CATERPILLAR INC., )<br>)<br>Third-Party Defendant. ) | Case No.  08-cv-1084 |

## <u>O R D E R  &  O P I N I O N</u>

This matter is before the Court on a number of Motions to Strike by Plaintiff, Macio Tooley (Docs. 40, 42, 45, 47, 59), two Reports & Recommendations ("R&R") by Magistrate Judge Cudmore (Docs. 68 & 83), Motions for Voluntary Dismissal of

Counts III and IV of his Amended Complaint by Plaintiff (Doc. 71), and a Motion for Summary Judgment by Defendant Gorbel, Inc. (Docs. 81 & 82).

On December 6, 2007, Plaintiff filed this suit in the Circuit Court of Tazewell County, Illinois, against Washington Group International ("WGI"). WGI removed the case to federal court, and Plaintiff then filed an Amended Complaint, adding as Defendants Cleveland Tramrail and Shepard Niles, and their respective successors in interest. Plaintiff alleges that, while he was working at Caterpillar, Inc., a crane collapsed and struck him. He alleges that WGI and its alleged successor in interest, URS Corporation,[1] are liable to him for breach of contract and negligence because it had a contract, to which Plaintiff was allegedly a third-party beneficiary, with Caterpillar to maintain the crane that injured him. Plaintiff also brought claims against the "Shepard Niles Defendants" and the "Gorbel Defendants,"[2] which he

---

[1] WGI admits that it was acquired by URS Corporation, but denies that URS is liable for WGI's actions and failures to act under the law of successor liability. (Doc. 57 at 1-2). URS has not separately appeared in this case.

[2] In the Amended Complaint, Plaintiff alleged that Gorbel, Inc., had "designed, engineered, manufactured, built and placed into the stream of commerce…a Cleveland Tramrail® patented track system." (Doc. 22 at 6). He alleged, somewhat confusingly, that Gorbel was Cleveland Tramrail's successor in interest, and captioned the Amended Complaint as the case is captioned above. (Doc. 22 at 7). Plaintiff also asserted a claim against Konecranes, Inc., which he asserted had "designed, engineered, manufactured, built and placed into the stream of commerce a hoist/crane lifting system." (Doc. 22 at 7). He alleged that Konecranes, Inc. was the successor in interest of Shepard Niles. (Doc. 22 at 8).

As noted by Magistrate Judge Cudmore in his December 14, 2009 R&R, the caption in the Amended Complaint apparently incorrectly names these two sets of defendants. (Doc. 83 at 2 fn. 3). Plaintiff has since learned that the Konecranes/Shepard Niles defendants should be named as "Defendant Shepard Niles, a trade name employed by Konecranes, Inc., f/k/a Kranco Crane Services, Inc." (Doc. 71 at 1; Doc. 29 at 1-3). Shepard Niles/Konecranes "makes no response to any allegations as to the entity 'Shepard Niles, Inc' to the extent that defendant has no involvement or successor interest or liability in connection with that

2

alleged designed and manufactured different pieces of equipment that Plaintiff was using at the time of his injuries.

On December 17, 2009, WGI filed a Motion for Leave to File a Third-Party Complaint against Caterpillar, Inc., Plaintiff's employer, which was granted by Magistrate Judge Cudmore. (Doc. 84; 12/18/09 Text Order). In the Third-Party Complaint, WGI alleges that if is required to pay a sum of money to Plaintiff, then it is entitled to contribution from Caterpillar for Caterpillar's negligence. (Doc. 86). The Third-Party Complaint against Caterpillar is not at issue in this Order & Opinion.

**PLAINTIFF'S MOTIONS FOR VOLUNTARY DISMISSAL OF COUNTS III AND IV**

On August 25, 2009, Plaintiff filed Motions for Voluntary Dismissal of Counts III and IV of his Amended Complaint. (Docs. 70 & 71). These Motions would have the effect of dismissing all of the Counts except I and II, and all of the Defendants except Washington Group International and its alleged successor in interest, URS corporation.[3] Plaintiff also sought an order from the Court "precluding remaining

---

corporate entity." (Doc. 29 at 2). This group of Defendants is referred to by Plaintiff as the "Shepard Niles Defendants," and the Court will continue that nomenclature for the sake of clarity. (Docs. 71 & 73).
    In addition, Plaintiff has learned that "Cleveland Tramrail" is a trade name for Shepard Niles, rather than a separate entity. (Doc. 70 at 1). In its Motions for Summary Judgment, Gorbel, Inc., asserts that it "purchased certain assets of the Cleveland Tramrail®" following the bankruptcy of Shepard Niles. (Doc. 82 at 1-3). Plaintiff refers to these Defendants as the "Gorbel Defendants," which the Court will also use. (Docs. 70 & 73).

[3]  Plaintiff sought to dismiss these Counts and these Defendants because, he alleges, Konecranes, Inc. purchased Shepard Niles' "hoist business products" upon Shepard Niles' bankruptcy, and Gorbel, Inc. bought Shepard Niles' "Cleveland Tramrail" business; both of these purchases were allegedly made free and clear of

Defendants…from claiming, arguing, implying or suggesting in any way that the terms of 735 ILCS 5/2-1117 [joint liability for negligence or strict liability] apply, in any way, to the Gorbel Defendants" or to the "Shepard Niles Defendants."  (Doc. 70 at 3; Doc. 71 at 3).  WGI did not object to the dismissals, but it did object to Plaintiff's additional request precluding it from arguing that the dismissed defendants are jointly liable with it for Plaintiff's injuries.

Magistrate Judge Cudmore submitted an R&R on the Motions for Voluntary Dismissal on December 14, 2009.  (Doc. 83).  In his R&R, Judge Cudmore found that Plaintiff's request for an order limiting WGI's ability to assert joint liability against the dismissed defendants was "outside the scope of his motions for voluntary dismissal" and "premature."  He recommended "that the motions be granted only to the extent that Plaintiff seeks dismissal of counts III and IV and the dismissal of the Defendants sued in those counts."

The parties were notified that failure to object to Judge Cudmore's December 14, 2009 R&R within ten working days after service of the R&R would constitute a waiver of any objections.  <u>See</u> 28 U.S.C. § 636(b)(1); <u>see also</u> <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).  Objections to the R&R were due by January 4, 2010, and none were made.  Therefore, the Court adopts the Report and Recommendation of the Magistrate Judge (Doc. 83) in full.  Accordingly, Plaintiff's Motions to Voluntarily Dismiss Counts III and IV (Docs. 70 & 71) are allowed in part and denied in part.  Counts III and IV of Plaintiff's Amended

---

Shepard Niles' liabilities.  (Doc. 72 at 2-4).  Plaintiff argues that the bankruptcy sales destroyed any potential liability of these defendants.  (Doc. 72 at 4-5).

Complaint are dismissed without prejudice, as are all Defendants except WGI and its alleged successor in interest URS Corporation.

As noted by Judge Cudmore in his R&R, this disposition also renders moot the other Motions relating to the dismissed defendants: Plaintiff's Motion to Strike Shepard Niles' Fourth and Fifth Affirmative Defenses to Count VI of Plaintiff's Amended Complaint (Doc. 40); his Motion to Strike "Reservations" Shepard Niles Has Interposed to Plaintiff's Amended Complaint (Doc. 42); his Motion to Strike Gorbel, Inc.'s, Affirmative Defense One to Count III and Affirmative Defense Two to Count III of Plaintiff's Amended Complaint (Doc. 45); his Motion to Strike Defendant, Gorbel, Inc.'s, Affirmative Defense Seven to Count III of Plaintiff's Amended Complaint (Doc. 47); and Gorbel, Inc.'s Motions for Summary Judgment. (Doc. 81 & 82). In addition, the portion of Magistrate Judge Cudmore's August 17, 2009 R&R addressing the above-noted Motions is now moot (Doc. 68).

**PLAINTIFF'S MOTION TO STRIKE WASHINGTON GROUP INTERNATIONAL, INC.'S, AFFIRMATIVE DEFENSE TWO TO COUNT I AND AFFIRMATIVE DEFENSE FOUR TO COUNT II OF PLAINTIFF'S AMENDED COMPLAINT**

On June 8, 2009, WGI filed its Answer and Affirmative Defenses to Plaintiff's Amended Complaint. (Doc. 57). As an Affirmative Defenses to Counts I and II, which allege, respectively, breach of contract and negligence, WGI asserted that, if a contractual relationship between itself and Plaintiff is found,[4] such contractual relationship bars Plaintiff's recovery because Plaintiff assumed the risk of operating the crane, which was inherent in the contractual relationship. (Doc. 57 at 4, 6). Plaintiff moved to strike these Affirmative Defenses, arguing that WGI was barred

---

[4] WGI denies that a contractual relationship existed between itself and Plaintiff. (Doc. 57 at 4, 6).

5

from asserting an assumption of the risk defense in response to the Amended Complaint, as such a defense in response to the original Complaint had been stricken by the Court on Plaintiff's unopposed motion. (Docs. 59 & 60). In the event that the Court did not agree with his primary argument, Plaintiff relied on Federal Rule of Civil Procedure 12(f), arguing that WGI had attempted to misstate Illinois law, in that Illinois law provides that assumption of the risk only reduces recovery (rather than barring it) in Plaintiff's situation. Defendant opposed the Motion to Strike, arguing that because its previously-pled affirmative defense was "arguably insufficient," the Court granted it leave to file an Amended Answer that more properly stated the affirmative defense under Illinois law. (Docs. 61 & 62).

Magistrate Judge Cudmore issued an R&R on August 17, 2009 addressing, *inter alia*, Plaintiff's Motion to Strike WGI's assertion of assumption of the risk as affirmative defenses to Counts I and II.[5] (Doc. 68). Magistrate Judge Cudmore found, first, that the law of the case doctrine did not bar WGI's re-assertion of assumption of the risk in its Amended Answer, as the Amended Answer was different in that it was based on the contractual relationship alleged by Plaintiff. Further, it was inappropriate to strike the defenses at the pleading stage, as the defense is cognizable under Illinois law when based on a contractual relationship. Magistrate Judge Cudmore also noted that Plaintiff had failed to allege the state of

---

[5] Magistrate Judge Cudmore's R&R also addressed Motions to Strike related to the Defendants that were later dismissed pursuant to Plaintiff's Motion for Voluntary Dismissal. As noted above, these Motions to Strike have now been rendered moot by the dismissal of the Gorbel defendants and the Shepard Niles defendants and the counts against them.

6

incorporation or principal place of business for URS Corporation, and recommended that Plaintiff be ordered to correct this omission.

Plaintiff filed an Objection to the R&R, disputing both of Judge Cudmore's conclusions regarding its Motions to Strike WGI's Affirmative Defenses. (Docs. 73 & 74). WGI opposes this Objection. (Doc. 75). Neither party objected to Judge Cudmore's recommendation that Plaintiff be ordered to correct its omission as to the state of incorporation or principal place of business for URS Corporation, and the Court will therefore adopt that portion of the R&R without further discussion.

First, WGI argues that Plaintiff's Objection was not timely filed. (Doc. 75 at 1-2). Under 28 U.S.C. § 636(b)(1), the parties had ten working days after service of the R&R in which to file objections to it; Judge Cudmore cited this deadline in his R&R.[6] (Doc. 68 at 12). Counting from the date of the R&R, August 17, 2009, it would appear that objections were due on August 31, 2009; Plaintiff's Objection was filed on September 3, 2009. However, the docket entry accompanying the R&R states that Objections were due by September 3, 2009. (Doc. 68 Docket Entry). This is because the system for establishing deadlines assumes a three-day period for service. Though electronic filing in most cases eliminates the need for such a service buffer, it appears that Plaintiff relied on the deadline given in the Court's docket entry, and the Court will not hold him to the earlier deadline.

---

[6] The current version of 28 U.S.C. § 636(b)(1), effective December 1, 2009, gives parties fourteen days to file objections. As the prior, ten-day, version was in effect when the R&R and Objection were filed, the ten-day rule controls here. Local Rule 72.2(B) also gives a ten-day deadline. Judge Cudmore specified "working days" because, under the pre-December 1, 2009 version of Federal Rule of Civil Procedure 6, when a period is stated in less than eleven days, weekends and holidays are to be excluded.

A district court reviews *de novo* any portion of a Magistrate Judge's R&R to which a "specific written objection has been made." FED. R. CIV. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id. As Plaintiff has objected to both of Magistrate Judge Cudmore's conclusions as to WGI's asserted affirmative defense, the Court reviews them both *de novo*.

As noted above, Plaintiff has moved to strike WGI's affirmative defense of assumption of the risk to the breach of contract and negligence counts against it. (Docs. 59 & 60). He argues that his alleged assumption of the risk, if proven, would only reduce damages on those counts, rather than bar recovery, as alleged by WGI. Motions to strike affirmative defenses are generally disfavored, and will not be granted "unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense and are inferable from the pleadings." Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir.1991); Heller Fin., Inc. v. Midwhey Powder Co. Inc., 883 F.2d 1286, 1294 (7th Cir.1989). "Courts generally do not grant motions to strike unless the defect in the pleading causes some prejudice to the party bringing the motion." Caterpillar, Inc. v. Wilhelm, 08-cv-2020, 2009 WL 3161354, *8 (C.D. Ill. Sept. 29, 2009) (citing Hoffman v. Sumner, 478 F.Supp.2d 1024, 1028 (N.D. Ill. 2007)).

Plaintiff objects to the R&R's conclusion that WGI properly pled an assumption of the risk, repeating his argument that assumption of the risk would only reduce damages in this case, not bar recovery. In Illinois, in some cases assumption of the risk is merely a form of comparative negligence, not a bar to

recovery. Evans v. Lima Lima Flight Team, Inc., 869 N.E.2d 195, 206 (Ill. App. 2007); Ill. Pattern Jury Instru. Civ. 13.00 Intro. 1 (2009 ed.). This rule applies where the "plaintiff is aware of and appreciates a danger that has been created by the defendant's negligence or other fault, but the plaintiff nevertheless voluntarily proceeds to encounter it." Id. (citing Duffy v. Midlothian Country Club, 481 N.E.2d 1037, 1041 (Ill. App. 1985) ("Duffy II"); Evans, 869 N.E.2d at 206. However, in cases of express assumption of the risk or "primary implied" assumption of the risk, where there is a contractual or employment relationship between the parties, assumption of the risk is a valid affirmative defense that can bar recovery. Evans, 869 N.E.2d at 206.

Plaintiff asserts that there was no contractual or employment relationship between himself and WGI on which to base the affirmative defense that his alleged assumption of the risk bars his recovery against WGI. To the contrary, Plaintiff himself asserts that he is a third-party beneficiary to an alleged contract between WGI and his employer. (Doc. 22 at 4). In Illinois, "third-party beneficiaries are subject to any contract defenses generally available against the contracting parties themselves." 12A Ill. Law and Prac. Contracts § 295 (citing Chicago Dist. Council of Carpenters Pension Fund v. Dombrowski, 545 F. Supp. 325 (N.D. Ill. 1982); XL Disposal Corp. v. John Sexton Contractors Co., 659 N.E.2d 1312 (Ill. 1995)). Whether Plaintiff was a third-party beneficiary of the alleged contract between his employer and WGI, as he alleges, cannot be determined at this time. Whether his employer and WGI even had a contract is still in dispute, as is the question of whether they "intended to benefit" Plaintiff by their alleged contract.

9

XL Disposal Corp., 659 N.E.2d at 1312 ("third-party beneficiary status is a matter of divining whether the contracting parties intended to confer a benefit upon a nonparty to their agreement"). Similarly, whether assumption of the risk is applicable to Plaintiff as a third-party beneficiary is still unknown.[7] At this point, however, Plaintiff cannot claim that there was *no* contractual relationship between himself and WGI, though it was allegedly indirect.

In this case, where Plaintiff alleges that he was the third-party beneficiary of an alleged contract between his employer and WGI, the affirmative defense of assumption of the risk cannot be stricken, as there is a set of facts that is inferable from the pleadings under which the affirmative defense could succeed. As noted above, recovery is barred only where there was an express assumption of the risk or a "primary implied" assumption of the risk. "Under express assumption of risk, plaintiff and defendant explicitly agree, in advance, that defendant owes no legal duty to plaintiff and therefore, that plaintiff cannot recover for injuries caused either by risks inherent in the situation or by dangers created by defendant's negligence." Duffy, 481 N.E.2d at 1041. "Primary implied" assumption of the risk occurs where "the risk of harm is not created by the defendant but is inherent in the activity which the plaintiff has agreed to undertake." Clark v. Rogers, 484 N.E.2d 867, 869 (Ill. App. 1985). See also Duffy, 481 N.E.2d at 1041. "[P]rimary [implied] assumption of risk is not really a defense to the defendant's negligence. Instead, it

---

[7] As pointed out by WGI, neither party has found a case discussing the application of primary assumption of the risk to a third-party beneficiary. As such, the Court cannot rule out this application yet, since general contract law holds that third-party beneficiaries are subject to the same defenses as the parties to the contract. The defense is not facially inadequate.

acts to negate liability on the ground that the defendant has no legal duty to protect the plaintiff from certain hazards."[8] ILL. PATTERN JURY INSTR.-CIV. 13.00 INTRO. 1 (2009 ed.).

Where the alleged contract between WGI and Plaintiff's employer, to which Plaintiff was allegedly a third-party beneficiary, is not in evidence, the Court cannot say that there is no set of facts under which express assumption of the risk could be proved. For example, the alleged contract may, by its express terms, relieve WGI of liability.[9] Further, the Court cannot say that "primary implied" assumption of the risk could not be applicable on facts inferable from the pleadings, as it might be proven that Plaintiff "knew of the specific risk which caused his or her injury" within the requirements of Illinois law, *i.e.*, that he knew WGI had negligently or in breach of contract failed to properly maintain the crane and to warn him of its danger, but that he accepted the risk anyway. Evans, 869 N.E.2d at 206 (defendant alleging "primary implied assumption of risk" defense must show that when plaintiff "participated in formation flying, he was aware of and accepted the risk that [defendant's] emergency procedures were possibly inadequate"). This will be an inquiry for a later point in this case, as further evidence will be needed to determine whether the facts of this case match up with the requirements of Illinois

---

[8] Plaintiff does not even mention "primary implied" assumption of the risk in his Objection or Memorandum in Support, focusing instead on express assumption of the risk and "secondary implied" assumption of the risk.

[9] Plaintiff attempts to rebut this point by stating that "Plaintiff and WGI did not agree in advance that WGI would owe no duty to Plaintiff." (Doc. 74 at 8). First, such a factual assertion cannot defeat WGI's affirmative defense at this point. In addition, WGI and Plaintiff's employer may have so agreed, and, as noted above, third-party beneficiaries are bound by any defenses that the contracting parties have against each other.

law on assumption of the risk. The Court does not here express any opinion as to the ultimate merits of the defense.

Finally, Plaintiff argues that WGI waived its right to assert this defense because it did not oppose Plaintiff's motion to strike the defense from WGI's original answer, which was granted. In the WGI's first Answer to Plaintiff's Amended Complaint, WGI asserted that "plaintiff assumed the risk of operating said crane under the circumstances presented by the evidence in this case which bars his recovery," which it listed as an affirmative defense to both the breach of contract and negligence counts against it. (Doc. 25 at 4, 6). Plaintiff moved to strike this affirmative defense, arguing that "[a]ssuming for the sake of argument that Defendant prevails on its assumption of risk defense, Illinois law provides that a plaintiff's assumption of risk only operates to reduce the plaintiff's recovery under comparative fault principles, not to bar plaintiff from any recovery as Defendant asserts." (Doc. 35 at 1). Magistrate Judge Cudmore, noting that WGI had failed to respond, granted Plaintiff's motion to strike. (4/17/09 Text Order). On May 18, 2009, WGI moved for leave to file an Amended Answer, including a copy of the proposed Amended Answer with its motion; Judge Cudmore granted WGI's unopposed motion and the Amended Answer was filed. (Doc. 54; 6/5/09 Text Order; Doc. 57).

Unlike its first Answer to the Amended Complaint, WGI's Amended Answer bases its assertion of the assumption of the risk defense on the alleged contract between WGI and Plaintiff's employer, to which Plaintiff alleges he was a third-

party beneficiary.[10] As explained above, the contractual basis alleged for the affirmative defense is necessary for WGI to prevail on this affirmative defense, and cures the pleading defect of WGI's first Answer, which appeared to argue that assumption of the risk barred recovery regardless of the existence of a contractual or employment relationship. As discussed above, a contractual or employment relationship is necessary if assumption of the risk is to bar recovery. One of the purposes of the rule allowing for liberal amendment of pleadings is to allow parties to cure pleading defects. Further, just as WGI failed to oppose Plaintiff's motion to strike the affirmative defenses from the first Answer, Plaintiff did not oppose WGI's motion for leave to file an amended answer, which included a copy of the proposed amended answer, which indicates that there was no prejudice to Plaintiff in allowing the amendment.

Therefore, Magistrate Judge Cudmore's R&R issued on August 17, 2009 (Doc. 68) is adopted as to its recommendation regarding Plaintiff's Motion to Strike Defendant, Washington Group International, Inc.'s, Affirmative Defenses and as to its recommendation that Plaintiff be ordered to correct its allegations regarding the state of incorporation or principal place of business for URS Corporation. Plaintiff's Motion to Strike WGI's Affirmative Defense Two to Count I and Affirmative Defense Four to Count II of Plaintiff's Amended Complaint (Doc. 59) is denied, and these affirmative defenses of WGI's may stand as pled in the Amended Answer.

---

[10] In the Amended Answer, WGI asserts that "defendant, while denying that a contract existed between defendant and plaintiff, states that *should a contractual relationship be found*, plaintiff assumed the risk of operating said crane inherent in *the contractual relationship* and the circumstances presented by the evidence in this case which bars his recovery." (Doc. 57 at 4, 6) (emphasis added).

Whether the factual and legal circumstances of this case will actually support the defense is not a question for the Court at this point, and remains to be seen.

IT IS THEREFORE ORDERED:

1. The Report and Recommendation by U.S. Magistrate Judge Byron Cudmore issued on December 14, 2009 (Doc. 83) is ADOPTED IN FULL.

2. Plaintiff's Motions to Dismiss Motion to Voluntarily Dismiss Counts III and IV of Plaintiff's Amended Complaint (Docs. 70 & 71) are ALLOWED IN PART AND DENIED IN PART.

3. Counts III and IV of Plaintiff's Amended Complaint are DISMISSED WITHOUT PREJUDICE, as are all Defendants except WGI and its alleged successor in interest URS Corporation.

4. Plaintiff's request for an order precluding WGI from arguing that the here-dismissed defendants are liable for his alleged injuries is DENIED.

5. Plaintiff's Motion to Strike Shepard Niles' Fourth and Fifth Affirmative Defenses to Count VI of Plaintiff's Amended Complaint (Doc. 40) is DENIED AS MOOT.

6. Plaintiff's Motion to Strike "Reservations" Shepard Niles Has Interposed to Plaintiff's Amended Complaint (Doc. 42) is DENIED AS MOOT.

7. Plaintiff's Motion to Strike Gorbel, Inc.'s, Affirmative Defense One to Count III and Affirmative Defense Two to Count III of Plaintiff's Amended Complaint (Doc. 45) is DENIED AS MOOT.

8. Plaintiff's MOTION to Strike Defendant, Gorbel, Inc.'s, Affirmative Defense 7 to Count III of Plaintiff's Amended Complaint (Doc. 47) is DENIED AS MOOT.

9. Gorbel, Inc.'s Motions for Summary Judgment (Docs. 81 & 82) are DENIED AS MOOT.

10. The Report and Recommendation by U.S. Magistrate Judge Byron Cudmore issued on August 17, 2009 (Doc. 68) is ADOPTED as to its recommendation regarding Plaintiff's Motion to Strike Defendant, Washington Group International, Inc.'s, Affirmative Defenses and as to its recommendation that Plaintiff be ordered to correct its allegations regarding the state of incorporation or principal place of business for URS Corporation, and is MOOT as to its other recommendations.

11. Plaintiff's Motion to Strike Defendant, Washington Group International, Inc.'s, Affirmative Defense Two to Count I and Affirmative Defense Four to Count II of Plaintiff's Amended Complaint (Doc. 59) is DENIED.

12. Plaintiff SHALL file a Second Amended Complaint alleging the state of incorporation and the principal place of business of URS Corporation, as well as eliminating the Counts and Defendants herein dismissed, within fourteen (14) days of the date of this order. WGI's Amended Answer MAY stand as answer to the Second Amended Complaint.

Entered this <u>14th</u> day of January, 2010.

                                                  s/ Joe B. McDade
                                                  JOE BILLY McDADE
                                                 United States District Judge